IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CARLOS COLDON, | ) |
| Plaintiff, | ) |
| v. | ) NO. 3:24-cv-01320 |
| RUTHERFORD COUNTY SHERIFF'S OFFICE, et al., | ) JUDGE CAMPBELL |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

Pro se plaintiff Carlos Coldon, while incarcerated at the Rutherford County Jail,[1] filed a civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1 ("the Complaint")) and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2.)

This case is before the Court for ruling on Plaintiff's IFP application and for initial review of the Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

### I. PAUPER STATUS

Subject to certain statutory requirements, *see* 28 U.S.C. § 1915(a)(1)–(2), (g), a prisoner bringing a civil action may be permitted to proceed as a pauper, without prepaying the $405 filing fee. Because Plaintiff's IFP application complies with the applicable statutory requirements and demonstrates that he lacks the funds to pay the entire filing fee, his IFP application (Doc. No. 2) is **GRANTED**.

---

[1] Shortly after filing suit, Plaintiff notified the Court of his transfer from Rutherford County to state custody. (Doc. No. 5.) On June 27, 2025, he notified the Court that he had been released from custody and now resides in Las Vegas, Nevada. (Doc. No. 7.)

## II. INITIAL REVIEW

**A. Legal Standard**

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. *Inner City*, *supra*.

Plaintiff filed the Complaint under Section 1983, which authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. The Complaint must therefore plausibly allege (1) a deprivation of a constitutional or other federal right, and (2)

2

that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**B. Factual Allegations**

Plaintiff is paralyzed and confined to a wheelchair. (Doc. No. 1 at 8.) After Plaintiff reported to Rutherford County Jail medical staff that he had "special medical needs," and that report was relayed to Rutherford County Sheriff's Office (RCSO) administration, Lt. P. Davis came to his cell on a day between July 1 and 8, 2024, "to investigate and address his concerns and issues." (*Id.* at 8–9.) Lt. Davis "stood behind [Plaintiff] and asked him if he could see himself in the mirror," and when Plaintiff responded that he could not, Davis said, "[W]ell I can see you." (*Id.* at 9.) Lt. Davis then told Plaintiff that "someone from ADA had already been to inspect this medical pod (2B) and determined that it was in full compliance." (*Id.*) Plaintiff pointed out that there were no handrails around his bed or toilet, which he needed to safely transfer himself. (*Id.*) Lt. Davis responded that he would not be installing handrails in Plaintiff's cell, so Plaintiff filed a grievance "due to the ongoing denial of much needed reasonable accom[mo]dations." (*Id.*) He subsequently appealed the denial of that grievance on July 11, 2024. (*Id.*) He does not allege that he suffered any injury due to the lack of handrails, but he seeks to subpoena his medical records from the Jail medical provider, Defendant Rudd Medical Service (RMS), "to verify proof of injuries suffered (stemming) from these" alleged violations of his rights. (*Id.* at 9–10.)

**C. Analysis**

1. <u>Section 1983</u>

The Complaint, filed on November 5, 2024 on a Section 1983 complaint form, claims that Plaintiff's Eighth Amendment rights were violated and names three Defendants: Lt. P. Davis (in both his individual and official capacity), the RCSO, and RMS. (Doc. No. 1 at 3, 8.)

3

It is well established that the RCSO is not a proper defendant to a Section 1983 lawsuit. *See Rose v. Rutherford Cnty. Sheriff's Off.*, No. 3:22-CV-00046, 2022 WL 323977, at *2 (M.D. Tenn. Feb. 2, 2022), and cases cited therein. Nevertheless, the Court liberally construes the claim against the RCSO as a claim for relief against Rutherford County itself. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint."). Rutherford County and RMS—the "private company that contracts with the Rutherford County Sheriff's Office to provide healthcare services to inmates," *Tucker v. Rudd*, No. 3:16-CV-00485, 2018 WL 1566825, at *1 (M.D. Tenn. Mar. 30, 2018)—are proper Section 1983 defendants. However, these municipal and corporate entities cannot be held liable under Section 1983 unless the execution of a municipal or corporate policy or custom was the "moving force" behind the deprivation of Plaintiff's constitutional rights. *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010) (municipal liability); *O'Brien v. Michigan Dep't of Corr.*, 592 F. App'x 338, 341 (6th Cir. 2014) (liability of private entity that contracts to provide inmate medical care).

The Complaint does not allege that any policy of Rutherford County or RMS was to blame for Plaintiff's housing in a jail cell that lacked handrails around the bed and toilet. Nor does it allege that the Rutherford County Jail lacks cells with appropriate handrails for wheelchair-bound inmates. It alleges only that Lt. Davis responded to Plaintiff's concerns about his particular cell by informing him that the pod where the cell was located, medical pod 2B, was ADA-compliant, and his cell would not be modified to include the handrails that Plaintiff desired around the bed and toilet. These allegations do not support any plausible, policy-based Section 1983 claim against Rutherford County or RMS.

4

That leaves the claim against Lt. Davis in his individual capacity.[2] The Complaint requests an award of damages and the injunctive remedy of transfer to a facility equipped for Plaintiff's special needs. (Doc. No. 1 at 11.) Neither remedy is available against Davis. First, Plaintiff's request for transfer from the Jail was rendered moot by his relocation to state prison and subsequent release from custody. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (finding that transfer to a different facility mooted injunctive claims) (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)). As for the demand for damages, because Plaintiff does not allege that he sustained any injury as a result of Davis's refusal to remedy the lack of handrails in his cell,[3] Davis cannot be liable for deliberate indifference to Plaintiff's safety or medical needs in violation of the Eighth Amendment. *See Horn by Parks v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 659 (6th Cir. 1994) ("[A] violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury."); *cf. Anderson v. Hairabedian*, No. 20-4177, 2022 WL 1411784, at *2–3 (6th Cir. Feb. 10, 2022) (finding that inmate who was exposed to risk of harm from incompatible inmate for a period of days but did not allege any physical or other injury did not plausibly claim deliberate indifference under Eighth Amendment). Accordingly, the allegations of the Complaint do not support any plausible right to the relief requested against any Defendant under Section 1983.

---

[2] In his official capacity, Davis stands in the shoes of his employer, the DCSO, *see Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003), which is not liable for the reasons discussed above.

[3] Plaintiff's request to subpoena RMS for records of any injuries he might have sustained at the Jail is not a substitute for pleading an actual injury that resulted from Davis's conduct. *See Patterson v. Novartis Pharms. Corp.*, 451 F. App'x 495, 498 (6th Cir. 2011) (where complaint supported inference of only a possible injury attributable to defendant, plaintiff "was not entitled to conduct discovery and gather the facts necessary to cure the defects in her pleading").

### 2. Disability discrimination

The Complaint also asserts causes of action under "ADA Title II, Rehabilitation Act & Discrimination." (Doc. No. 1 at 8.) Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "[S]ervices, programs, and activities" under the ADA encompass "virtually everything" a prison or jail does, including provision of bathroom facilities and medical care. *Keller v. Chippewa Cnty., Michigan Bd. of Commissioners*, 860 F. App'x 381, 386 (6th Cir. 2021). Title II is a close analogue of Section 504 of the Rehabilitation Act, so claims under these statutes "generally are evaluated together." *Knox Cnty., Tennessee v. M.Q.*, 62 F.4th 978, 999–1000 (6th Cir. 2023) (quoting *M.G. ex rel. C.G. v. Williamson Cnty. Schs.*, 720 F. App'x 280, 287 (6th Cir. 2018)).

"[C]laims under Title II of the ADA and the Rehabilitation Act cannot be brought against public officials acting in their individual capacities," *Carter v. Washington*, No. 23-1760, 2024 WL 3191094, at *5 (6th Cir. June 24, 2024) (citing *M.J. ex rel. S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 452 n.9 (6th Cir. 2021)), so Lt. Davis cannot be personally liable for damages under these statutes. Neither can RMS—which, though it performs a traditional state function by providing medical care to Jail inmates, is not a public entity for ADA purposes. *See Cox v. Jackson*, 579 F. Supp. 2d 831, 852 (E.D. Mich. 2008) ("A private contractor does not become a 'public entity' under Title II merely by contracting with a governmental entity to provide governmental services.") (citing cases).

The RCSO, operating as an extension of Rutherford County, is a public entity. *See Tucker v. Tennessee*, 443 F. Supp. 2d 971, 972 (W.D. Tenn. 2006), *aff'd*, 539 F.3d 526 (6th Cir. 2008)

6

("The term 'public entity' includes state and local governments, as well as their departments, agencies and instrumentalities.") (citing 42 U.S.C. § 12131(1)). As such, the RCSO may be liable for compensatory (but not punitive) damages under Title II of the ADA or Section 504 of the Rehabilitation Act. *See Johnson v. City of Saline*, 151 F.3d 564, 573–74 (6th Cir. 1998); *see also, e.g., Brown v. Clemens*, No. 3:22-CV-01067, 2025 WL 2422615, at *8 (M.D. Pa. Aug. 21, 2025) ("[P]unitive damages are simply not an available remedy under either Title II of the ADA or Section 504 of the RA.") (citing *Barnes v. Gorman*, 536 U.S. 181, 189–90 (2002)).

There are two types of Title II claims: "claims for intentional discrimination and claims for a reasonable accommodation." *Roell v. Hamilton Cnty., Ohio/Hamilton Cnty. Bd. of Cnty. Commissioners*, 870 F.3d 471, 488 (6th Cir. 2017) (quoting *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907 (6th Cir. 2004)). The Complaint in this case asserts a failure-to-accommodate claim. "To prevail under this theory, a plaintiff must show that the defendant reasonably could have accommodated his disability but refused to do so," and therefore treated Plaintiff unfavorably "because of his disability." *Finley v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024).

Importantly, the RCSO cannot be vicariously liable for Davis's alleged mistreatment of Plaintiff, which is the focus of the Complaint's factual allegations. *See Jones v. City of Detroit, Michigan*, 20 F.4th 1117, 1121 (6th Cir. 2021) (finding that "Title II of the ADA and the Rehabilitation Act import Title VI's remedial regime," under which vicarious liability is not allowed) (citing, *e.g., Rodgers v. Smith*, 842 F. App'x 929, 929 (5th Cir. 2021) (per curiam) ("Title VI allows neither personal liability claims against individuals nor vicarious liability claims against employers for the acts of their employees.")). The Complaint does not suggest that Lt. Davis wielded the authority to determine, on behalf of the RCSO, the necessary accommodations for inmates' disabilities, nor does it suggest that Plaintiff otherwise received unfavorable treatment

from the RCSO. Its only allegations potentially involving the RCSO but not Davis are that Plaintiff's institutional grievance appeal (filed on July 11, 2024) was determined by unidentified personnel to be "Resolved [-] Unsubstantiated." (Doc. No. 1 at 7–8, 9.) It is not clear from the Complaint whether Plaintiff was granted some accommodation in the four months between the resolution of his grievance appeal and the filing of this lawsuit. Regardless, these sparse allegations about the grievance process do not support an inference that Plaintiff was denied reasonable accommodation pursuant to any policy, regulation, or other RCSO ruling which was unfavorable to Plaintiff "because of his disability." *Finley*, 102 F.4th at 820. Accordingly, he fails to state a plausible claim against this public entity under either the ADA or the Rehabilitation Act.

### III. CONCLUSION

For the reasons discussed above, this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted. In light of the dismissal, Plaintiff's pending Motion to Appoint Counsel (Doc. No. 8) is **DENIED** as moot.

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE